At least we're done with design patents for now. May I proceed? Ready. Thank you, Your Honor. Okay, so the technology in this case, now a utility patent, is still pretty simple. We're dealing with gravity feed dispensers where you load cans into chutes, they roll down a ramp, and they're dispensed. Gravity feed dispensers have been known in the art for decades, and there's no question that the dispenser that's claimed in Claim 27 of the 111 patent differs only slightly from the prior art. Those differences are obvious, predictable variations to a simple mechanical device that are not patentable. So we have the Claim 27, which the parties broke down into 11 enumerated elements, and we presented the board with a single patent that issued 75 years ago, Weisselbaum. Can I just take you to, we've limited time and there's several issues floating around here. Yes, Your Honor. And I wanted to address you to limitation 10, the forward edge portion and the rearward recess. I find this, frankly, somewhat confusing, and maybe if I don't understand it at the end of the day, the tie goes to the patent board. Can you explain your position of why the board was incorrect on the forward edge portion? Yes, Your Honor. Do you have a figure or anything? Yeah, it probably will help, Your Honor, to keep three figures relatively handy. So page 37 of our blue brief, page 39 and 41. So taking them in reverse order, page 41 is what the patent owner presented and what the board seems to have cited. Page 39 is the patent owner's infringement contentions, and page 37 is our illustration of how Weisselbaum, the prior art reference, meets that claim element. So element 10 kind of gets right in conjunction with elements 9 and 11. Those three together form the return feature, which is basically just a way that you can take a can out of the rack and then put it back in by setting it on top of something in the lower chute. So element 10, we have element 9, which refers to the panels. Just give me a second to get the language here. So element 9 talks about the distance between the stop structure of the second chute being offset from the first chute. That's where you put the can back. It then says 9 goes into 10 and says, and said panels having a forward edge portion. And so we know the panels are basically the sides of the dispenser. The sides of the dispenser have a forward edge portion, and what we know about the forward edge portion is that it extends vertically adjacent the loading openings of the chutes, and that the forward edge portion defines a rearward recess that is adjacent to the dispensing ends, plural, both dispensing ends. And so if you look at Gammon's infringement contentions on page 39, and you see the green line, what Gammon contended there is what we say the proper construction is, which is panels. I'm sorry, what page are you on with this green line? 39 of our 41. So what the petitioner presented for purposes of infringement is consistent with how we're saying this claim language should be construed here. So the panels are the sides of the dispenser. The forward edge portion is a forward-facing portion that runs from the top to the bottom. That forward edge portion defines a recess that's adjacent both dispensing ends. So the recess you have to look at, the recess extends from the stop structure of the first chute up to the top of the second chute. That's how Gammon defined this claim element for purposes of infringement. So if you look at page 37, which is our showing of how Wechselbaum teaches that claim limitation. Wait, I'm sorry, go back to 41. Of course, Your Honor. What is it that you think is wrong about how this picture is drawn? You don't think the rearward recess is that thing in the middle. You think it's down below. What's wrong is the purple lines kind of confuse things, but what the patent owner proposed, and the board never actually expressly construed Claim 10. They just said, well, we think that Wechselbaum doesn't need it. Just tell me what's wrong with this. So what's wrong with it, Your Honor, and what the board seems to have agreed with is the board construed the front edge portion to be only the part that's vertically adjacent to the loading openings, and then they drew a straight line there. They just made that a planar cutoff. So they drew a straight line down and cut off the bottom part of the forward edge portion of the panels. I don't understand that to be the board's opinion at all. I don't understand that to be what the board construed. So what the board said is that, again, the board defined the recess of element 10. They started from just that loading end portion, the top part of the panel where the cans are loaded into, and it defined a recess from the bottom of that loading end portion. Can you refer us to a page in the board's opinion? 53 should be the page in the board's opinion. So what the board did, and I'm actually looking at 54. So at 53 and 54. So the board defined the recess basically from the base of the loading area to behind the second stop structure. Oh, I'm sorry. 54 is turning to the discussion of Weisselbaum. Right. Okay. Are you understanding that discussion to contain the claim construction? See, again, the board never fully construed the claim. So what they did is they agreed with Patent Donor that you start the recess from basically the bottom of the loading end, the bottom of that loading chute area, and then you extend backwards from there towards the second chute structure. So to the board, the recess seems to end at the second chute stop structure. Okay. And so what the board did then is look at Weisselbaum and decided Weisselbaum didn't meet that limitation because if all you're looking at is the space between the bottom of the loading area and the second stop chute, you don't get a rearwardly defined recess. Okay. Even if that is correct, wouldn't the horizontal distance limitation also result in an affirmance in this case? So you have to get over both of them, it seems to me, to get an affirmance. So tell me what's wrong with the horizontal distance limitation. The horizontal distance limitation, is this what we're referring to as the return feature functionality? I'm referring to the words horizontal distance in the claim. So the horizontal distance in the claim, that's limitation nine. So it's a horizontal distance that the stop structure of the second chute is offset rearwardly from the stop structure of the first chute, sufficient that a product removed can be replaced. So what the board found, and this we think they did get correct, is that that limitation is defined in functional language. And under In re Schreiber, if there's a prior art structure that's capable of performing that functionality, it meets that element. And Weizelbaum does that. That device, when it's loaded with cans that are smaller than happen to be shown in its embodiments, meet that limitation. And that's something that Gammon actually admitted at the hearing. Except that your problem is that Weizelbaum says throughout, in multiple places, that you could use different size cans by also modifying the dimensions of the structure. So Weizelbaum, I'm not going to say it teaches away from the use of smaller cans, but it actually expressly suggests that you could vary the size of the can and then vary the structure size accordingly. So why would one of skill in the art have modified Weizelbaum to use smaller cans without also then following its teaching that if you're going to use smaller cans, you're going to want to vary the rest of the size of the structure. And then you wouldn't have that feature. You wouldn't have a device capable of. So what we're dealing with here is it's not a modification of Weizelbaum itself. The device is the device. The question is what cans you put into the device. It is a device because it claims cans. This utility patent claims cans also. And it even specifies the dimensions of the cans and everything. It just says that they're a predetermined diameter. It doesn't say that they are a particular size in relationship. You mean Weizelbaum? In Weizelbaum.  comparing diameter to length. Correct. So Weizelbaum just says that Weizelbaum is a dispenser and it claims cans of a predetermined size. But it doesn't tell you what that size is. So if you look back at In re Schreiber, that's where you were dealing with the funnel of an oil can that was found to be capable of serving as the top of a popcorn dispenser. So that wasn't a modification of that funnel. The funnel was what it was. You didn't give any motivation for someone of skill in the art to modify what is disclosed in Weizelbaum, which includes cans that have a particular size compared to the device vis-a-vis the pictures. And you're saying don't use cans like that. Use much smaller cans. Then it would work the same way. That's what you're saying. That is a modification of what is disclosed in Weizelbaum, for sure. And you haven't given me a reason to think a skilled artisan would choose to do that, especially where Weizelbaum itself says if you want to use a different size can, change the dimensions of the device. So Weizelbaum claims a dispenser for cans, and it shows embodiments, and those embodiments show cans of a particular size. But to read that to say that Weizelbaum can only be used with cans of that size, I think is to read Weizelbaum too narrowly. So getting back to a point that— No, but I don't think that's Judge Moore's point, nor was it the PTAB judge who wrote this. It's because the way he construes Weizelbaum is the statement there is directed towards altering the size of the display device if you sought to accommodate different can sizes. So that, yeah, different can size means you're going to alter the size of the display device, right? So it's not going to make any difference for your purposes. But Weizelbaum teaches structure, right? And again, that's what Emory-Schreiber was about. It teaches structure. It's structure that is capable of that return feature functionality, which Gammon did admit. So, for example, I'm just— Capable how? Capable how because once you put smaller cans into it, Weizelbaum teaches a device that's been on the shelves for 75 years or that's been in the public— But is there anything in Weizelbaum that teaches you put smaller cans in so therefore you can have this claim limitation? Weizelbaum notes that it can be used with different sized cans. If you change the dimension of the device. There's nowhere where it says it can be used with smaller size cans without attaching to it this other condition. That's your problem. But Weizelbaum, I think you have to take— I'm sorry? No, please go ahead. Oh, I'm sorry. I think you have to take the structure that Weizelbaum teaches. So, again, if one— No, you have to take a reference for what it discloses. Correct. You don't take the structure for what it teaches. You take a reference for all that it discloses. Correct, Your Honor. It does. But as you said, Weizelbaum doesn't teach away from putting any particular size cans in there. So Weizelbaum teaches a device that's been in the public domain for 75 years. And basically what we're hearing and what we're seeing is that if you put dog food cans into it, maybe it doesn't have return feature functionality. If you put soda cans into it, it will. And so that which infringes if it comes earlier can infringe if later. Okay. We're into your rebuttal. I'll hear from the other side. Thank you. Thank you, Your Honor. Can I draw your attention to page 35 of our brief as that's available? This shows the actual inside of the Weizelbaum device and how the size of the cans is critically connected to the operation of this device, which is actually a fairly clever one. It's designed to have cans loaded on top. And the designer noticed that people tend to take out cans from the bottom first for some reason if it was more accessible. And so he made this locking function so that you'd unload the bottom part and it would be eventually empty. And to make sure that you have a throughput of cans so you don't get a really old one staying in there, you would then take out the only can you could take out would be the front one of the upper dispenser. And then you pull that out, and it would release the can in the back, and then you could advance to load the bottom again. So as a result, you're kind of scooching out one at a time the cans in the upper shelf above the lower shelf. And that is different than what you've claimed. This is a limitation of mine because it's the positioning of the cans being at a different position. There's a whole elaborate thing, but we have two separate chutes that come down. And what we've claimed is really, in a sense, it's not as good as Weizelbaum because, in theory, you could leave something in our design rack longer than that configuration. But we have... But this doesn't have the return feature, which people like. It doesn't have a return feature, no. It's a critical problem here. And the distance between the stops has to be enough to allow the can to be taken out and put back in so it doesn't... But you're talking about your patent now. Yes, our patent, our patent, yes. Because there's a distance between the stops, which is great enough to allow that. This feature isn't present. I want to ask you a big-picture question. I don't really want you to... You can explain in a second. Maybe somebody would like to hear you explain the front edge portion discussion. But for me, if I can affirm this case based on Element 9, which is the horizontal distance portion, I'm just wondering if there's any need for me to wade into that front edge portion at all given that an affirmance is an affirmance. But let me just tell you, I'm probably sending this case back for SAS. So keep that in mind. So now do you need me to... Because there are unresolved petitioned arguments in this case as well. Assume you're not going to get me on waiver on that. So if this case is going back for SAS... Can I get you on just the fact that the facts that are resolved here will resolve all those issues? Well, that's where I was trying to go. Where I was trying to go is given that I'm going to send it back, is there... See, here's your problem. Rogers, they argued the Rogers... I went through every ground, and I made a table. So you can see I'm pretty invested in my current position. Because I went through every ground they alleged, and we made a table to look. And for Claim 18, they also alleged that in addition to Weisselbaum disclosing the horizontal distance of Claim 9, Rogers also discloses it. So there's one claim, and only one claim, which is Claim 18. Of all the claims they've argued for, all the petitioned arguments that weren't addressed, there seems to be only one place where horizontal distance is argued in a manner that this case of ours will not resolve everything for. So technically, I think you're right. I think I could actually resolve all the other grounds for the PTO and save from the hassle, but I don't know what to do about Rogers and Claim 18. I don't know. I think that includes Weisselbaum, Nesso, and Rogers on top, don't they? Yes, it does. But they argue either what both Weisselbaum and Rogers each independently disclosed the horizontal distance. Their problem is also that the board found that you can't combine Weisselbaum with Nesso. So if I agree that you can't combine Weisselbaum with Nesso, then you're right. Rogers doesn't provide some of the stuff they need from Nesso, so that gets rid of that. I don't think Rogers has the same thing. Just for edification on the SAS issue, the board used to decline to institute not just because they found no sufficient grounds, but because of redundancy. I saw that with some frequency. And when I look at my chart about what's been instituted and what hasn't, I'm just interested. Was it your view that the stuff that wasn't instituted was because it would be redundant? They were going to institute on these main references? The stuff that wasn't instituted was because it was a different expression of the distances between the parts. We actually said it would be the distance from the front stop to the back stop was greater than the diameter of a can. That was an affirmative expression of it. And it was clearly absent in the references that were cited. And it actually is a combination of things here, too. There's a vertical compactness with this setback. The other issue, of course, which is highly important we haven't even talked about is the secondary considerations here. Because my client sold $30 million of this rack to Campbell Soup. That's commercial success. You say $30 million? It's $31 million. It's $31 million. So that's a pretty significant thing. And then when Campbell Soup got tired of paying my client for these racks, they started copying it. And they fastidiously copied it. So it looks very much like it, strikingly so. And there's a bunch of exhibits in here that show that incredible similarity. And a number of things they did copy are this and the general appearance. So there was a challenge to the commercial success only on the issue of how much our racks had contributed to the increase in sales that Campbell Soup encountered. That doesn't go to the copying of this, which they basically admitted by a non-admission admission. They argue that you didn't sell any more soup. I'm sorry. In their briefs, they say there's no commercial success because more soup was not sold. Well, commercial success is selling the racks, first of all, the $30 million of sales to them. But they also have in their annual stuff from 2007, they concede increasing condensed soup cans was due to inter alia, the gravity feed systems. What is the exact quote? It's appendix… 1612. 1612? Yes, okay. Sorry to highlight this page. That's all right. There's actually 1, 2, 3, 4, 5, 6, 7, 8, 9 different places where Campbell's annual reports attribute the increase in their soup sales to the display rack. So, and the board said this apparently contributed to some improvement in sales and that's a commercial success too in addition to the copy and the large number of sales to Campbell's soup. So, okay. So, I don't have any more. Okay, thank you. Thank you. So, can you begin by addressing the SAS question and whether or not if we were to affirm on one or any or all bases, what's left, is there anything realistically that's left for the board to do on the other combinations if they didn't institute that? I think there are, Your Honor. There are factual findings to be made on those other combinations. Like which ones? Including the one that Your Honor was talking about, the Rogers combination. There's going to need to be findings of fact as to whether there would be a motivation to combine Weitzelbaum, for example, in view of Nesso and Rogers and what Rogers teaches about the return feature functionality. But that's only for one. As far as I can tell, that's only for maybe one or arguably two claims in the whole petition. It seems to me that everything else is entirely resolved. If we were to affirm this case across the board, everything else is entirely resolved. If you were to affirm this case across the board, Your Honor? Let me give you a for example. Every single claim contains the horizontal distance limitation. Correct, Your Honor. If I may touch on just a couple of points. First, just going back briefly to what Weitzelbaum teaches, there's evidence in the record, appendix pages 1274 to 75, that when you put smaller cans into Weitzelbaum, there sometimes will be no need to make any change to the device at all to still achieve the same type of locking and guiding functionality that it teaches. Second, I think where that takes you more broadly, is you have to look at the question before the court is whether a person of ordinary skill in the art would have been motivated to combine the teachings of Weitzelbaum with the teachings of Nesso to arrive basically at a dispenser having two shoots. And we put evidence into the record that there are two reasons why a person of ordinary skill would be motivated to do that. Gavin did not dispute either of those reasons, and the board's rejection of them is not supported by substantial evidence in the record. And lastly, on the issue of secondary considerations, I know I'm close to out of time. What's missing here is an important nexus. You can't tie commercial success to the gravity feed dispensers generally. They were out there in the art. There has to be something patentably distinct about this claimant's claimed invention that contributed to the commercial success. The only thing that seems to be even arguably patentably distinct here, and we obviously submit that it's not, is that return feature functionality, and there's nothing in the record to suggest that anyone thought that that particular functionality had anything to do with the success that Campbell's may have achieved in using gravity feed dispensers generally as part of a broader system. Thank you. I'm just saying both sides of the case have submitted that those are received. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.